IN THE DISTRICT COURT OF THE VIRGIN ISLANDS
ST. THOMAS AND ST. JOHN DIVISION

| | |
|---|---|
| GOVERNMENT OF THE UNITED STATES VIRGIN ISLANDS<br><br>Plaintiff,<br><br>v.<br><br>OCWEN USVI SERVICES, LLC, as successor in interest to OCWEN MORTGAGE SERVICING, INC.<br><br>Defendant. | CASE NO. 3:26-cv-00004 |

**MEMORANDUM OPINION**

*I)* *Introduction:*

Before the Court is yet another battle in the long war of attrition between the Government of the Virgin Islands (hereinafter "GVI") and Ocwen USVI Services (hereinafter "Ocwen"). In this civil action—the fifth separate action filed by the parties over the past four years[1]—the GVI claims that Ocwen was not entitled to certain tax benefits provided to it by the GVI since 2012.

[1] 1) "Ocwen I" – 3:22-cv-66: Suit by Ocwen seeking disbursement of tax refunds from GVI for 2013 through 2016.

2) "Ocwen II" – 3:24-cv-5: Suit by Ocwen to enforce closing agreement under 26 U.S.C. § 7121.

3) "Ocwen III" – 3:24-cv-14: Suit by GVI contesting Ocwen's tax refund for 2019.

4) "Ocwen IV" – 3:24-cv-53: Suit by GVI to claw back partial tax refunds paid under § 7121 closing agreement.

[ECF No. 1-2, p. 16]. As such, the GVI argues that it is entitled to receive back payments of tax that Ocwen owed but never paid.

The GVI's complaint rests on two counts: a common law action for recovery of benefits/debt (Count I) and an action for declaratory judgment (Count II). [ECF No. 1-2, pp. 16 - 18]. Notwithstanding the GVI's recent attempt to re-cast and re-characterize things, this is—and always has been—a dispute over Ocwen's tax liability to the GVI.

Ocwen has filed a motion to dismiss this action by the GVI under Federal Rule of Civil Procedure 12(b)(6), which provides that a motion to dismiss a complaint may be filed for "failure to state a claim upon which relief can be granted." [ECF. No. 7]. The GVI has responded in opposition to Ocwen's motion to dismiss. [ECF No. 35].

"A motion made under Rule 12(b)(6) challenges the legal theory of the complaint, not the sufficiency of any evidence that might be adduced. The purpose of the rule is to allow the court to eliminate actions that are fatally flawed in their legal premise and destined to fail and thus spare the litigants the burdens of unnecessary pretrial and trial activity." *Advanced Cardiovascular Sys., Inc. v. SciMed Life Sys. Inc.*, 988 F.2d 1157, 1160 (Fed. Cir. 1993). Or, as another Court put it: "Like a battlefield surgeon sorting the hopeful from the hopeless, a motion to dismiss invokes a form of legal triage, a paring of viable claims from those doomed by law." *Iacampo v. Hasbro, Inc.,* 929 F. Supp. 562, 567 (D.R.I.1996). If any legal requirement of the claim is not pleaded, the motion should be granted. *See Hishon v. King & Spalding,* 467 U.S. 69, 73 (1984).

At the outset, the Court acknowledges the significant harm alleged by the GVI to the public treasury. The potential loss of tens of millions of dollars in tax revenue would be consequential for any similarly sized jurisdiction, and the Court appreciates this could leave a lasting impact on the ability of the Territory's elected officials to formulate and pursue their policy goals. Thus,

even where the Court disagrees with the legal theories propounded by the GVI or declines to grant the relief sought, the Court nevertheless respects the steadfast advocacy of counsel for the GVI in these matters.

Be that as it may, this Court is duty-bound to interpret and apply the law without fear or favor, and after careful consideration of the parties' submissions and the record in this matter, the Court concludes that both counts in the GVI's complaint are "fatally flawed in their legal premise and destined to fail." Consequently, the Court will grant Ocwen's motion and dismiss both counts of the GVI's complaint with prejudice.

*II)* *<u>Subject Matter Jurisdiction:</u>*

As required in all matters, this Court must fulfill its independent duty to identify the basis of its subject matter jurisdiction. As already stated, this matter remains fundamentally about the income tax laws applicable to the Virgin Islands. As such, the District Court of the Virgin Islands possesses—and will continue to retain—exclusive jurisdiction over it.

The Revised Organic Act of 1954 states in relevant part as follows:

> The District Court of the Virgin Islands shall have exclusive jurisdiction over all criminal and civil proceedings in the Virgin Islands with respect to the income tax laws applicable to the Virgin Islands, regardless of the degree of the offense or of the amount involved, except the ancillary laws relating to the income tax enacted by the legislature of the Virgin Islands.

48 U.S.C. § 1612(a).

Indeed, the Third Circuit held long ago that because the U.S. Tax Court lacks jurisdiction over Virgin Islands territorial tax liabilities, Congress vested exclusive original jurisdiction over Virgin Islands income tax matters in the District Court of the Virgin Islands under the Revised Organic Act. *See Dudley v. Comm'r*, 258 F.2d 182, 184–88 (3d Cir. 1958). Furthermore, as the

United States Tax Court itself noted more recently, the District Court of the Virgin Islands "is the sole court that may determine the correct amount of . . . Virgin Islands tax liabilities." *Huff v. Comm'r*, 135 T.C. 605, 611 (2010).

In this civil action, the GVI has recently pivoted to attack the underlying validity of Ocwen's certificate under the territorial Economic Development Program ("EDC Certificate"). The GVI asserts that Ocwen's income was not sourced in the Virgin Islands, depriving Ocwen of entitlement to EDC tax benefits that it received from 2012 until 2020. [ECF No. 1-2, p. 17]. The premise undergirding this argument is that since Ocwen violated its EDC Certificate by earning income that was not sourced in the Virgin Islands, it was never entitled to receive the generous tax benefits that it received by virtue of the GVI granting it an EDC Certificate. Under the GVI's theory, it owes Ocwen no tax refunds, and instead it is owed substantial back taxes from Ocwen.

Because the GVI's new arguments revolve around Ocwen's EDC Certificate, a question might arise regarding the scope of this Court's subject matter jurisdiction under the Revised Organic Act's "ancillary laws" exception. To preclude any doubt on this question, the "ancillary laws" exception—which under limited circumstances grants jurisdiction to the Virgin Islands Superior Court—does not apply here. Irrespective of the GVI's new line of attack, there is no logical way to untangle Ocwen's EDC certificate from the sourcing of its income, which is *per force* an issue arising under the mirror tax system. Circuit precedent makes clear that the District Court holds exclusive jurisdiction over such enforcement actions, both civil and criminal, brought under the mirror tax system. *See V.I. Bureau of Internal Revenue v. Chase Manhattan Bank*, 312 F.3d 131, 135–36 (3d Cir. 2002). By the GVI's own description of what this matter is and based upon the relief that the GVI itself seeks, this is a civil action for the recovery of taxes allegedly owed under the mirror system.

Moreover, even to the extent that the controversy involves local tax statutes (such as the gross receipts tax) passed by the Virgin Islands Legislature, such statutes face structural limits as they cannot divest this Court of its jurisdiction over territorial income tax laws. *See Pan Am. World Airways, Inc. v. Gov't of the V.I.*, 459 F.2d 387, 391 (3d Cir. 1972). Therefore, subject matter jurisdiction over this action remains firmly rooted here with the District Court.

*III)* *Legal Standard:*

The Court grants dismissal based on FED. R. CIV. P. 12(b)(6), "Failure to State a Claim Upon Which Relief Can Be Granted." When considering such motions, the Third Circuit follows the analysis set forth by the Supreme Court in *Bell Atlantic v. Twombly* 550 U.S. 544 (2007) and *Ashcroft v. Iqbal* 556 U.S. 662 (2009). Under the pleading regime established by these two Supreme Court precedents, a court reviewing the sufficiency of a complaint must take three steps. First, it must take note of the elements the plaintiff must plead to state a claim. Second, it should identify allegations that, because they are no more than conclusions, are not entitled to the assumption of truth. Finally, when there are well-pleaded factual allegations, the court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief. *Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 787 (3d Cir. 2016) (quotations omitted). "When assessing the merits of a Rule 12(b)(6) motion, we accept as true all factual allegations in the complaint and view those facts in the light most favorable to the non-moving party." *Doe v. Univ. of the Scis.*, 961 F.3d 203, 208 (3d Cir. 2020).

Further, the district court must "draw all reasonable inferences" from the allegations and also construe them "in the light most favorable" to the plaintiff. *Connelly*, 809 F.3d at 786 n.2 & 790. To survive a motion to dismiss, a complaint must contain sufficient factual allegations, taken as true, to state a claim to relief that is plausible on its face. *See Nekrilov v. City of Jersey*, 45 F.4th

662, 668 (3d Cir. 2022). "A facially plausible claim is one that permits a reasonable inference that the defendant is liable for the misconduct alleged." *Univ. of the Scis.*, 961 F.3d at 208 (quotations omitted). However, a court "need not credit a complaint's bald assertions or legal conclusions when deciding a motion to dismiss. *Morse v. Lower Merion School Dist.*, 132 F.3d 902, 906 (3d Cir. 1997) (quotations omitted).

*IV)* *The GVI's Two Counts:*

*a.* *GVI's Action for Recovery of Benefits/Debt*

*(1)* *The Common Law Claim*

Count I of the GVI's Complaint (Action for Recovery of Benefits/Debt) will be dismissed with prejudice. As an initial matter, the GVI does not precisely identify what common law cause of action it is pursuing. This is a problem because FED. R. CIV. P. 8 states, in pertinent part:

> A pleading that states a claim for relief must contain: (1) a short and plain statement of the grounds for the court's jurisdiction …; (2) a short and plain statement of the claim showing that the pleader is entitled to relief; and (3) a demand for the relief sought, which may include relief in the alternative or different types of relief.

"It is not the function of trial judges to redraft, edit or otherwise conform complaints to the cited rule." *Silver v. Queen's Hosp.*, 53 F.R.D. 223, 225 (D. Haw. 1971) (citing *Gilbert v. Gen. Motors Corp.*, 1 F.R.D. 101 (D.C.N.Y. 1940)). All attorneys, but especially experienced government counsel, practicing in Federal courts have a professional duty to adhere to the rule's requirements. *Id* at 226 ("[N]either the Court nor opposing counsel should be required to expend time and effort searching through large masses of conclusory, argumentative, evidentiary and other extraneous allegations in order to discover whether the essentials of claims asserted can be found in such a mélange").

Although the GVI leaves the Court guessing, the Court presumes that the GVI makes a claim for unjust enrichment, which is recognized under the common law of the Virgin Islands. This is an equitable quasi-contract cause of action, imposing liability where there is no enforceable contract between the parties, but fairness dictates that the plaintiff receive compensation for services provided. *Cacciamani and Rover Corp. v. Banco Popular de Puerto Rico*, 61 V.I. 247, 251 (V.I. 2014); *Ainger v. Great Am. Assurance Co.*, No. 2020-0005, 2022 WL 4379794, at *14 (D.V.I. Sept. 22, 2022). Under Virgin Islands law, a claim of unjust enrichment requires the plaintiff to prove four elements: (1) that the defendant was enriched; (2) that such enrichment was at the plaintiff's expense; (3) that the defendant had appreciation or knowledge of the benefit; and (4) that the circumstances were such that in equity or good conscience the defendant should return the money or property to the plaintiff.[2] *Walters v. Walters*, 60 V.I. 768, 789-80 (V.I. 2014); *Cacciamani*, 61 V.I. at 251 n.2; *Ainger*, 2022 WL 4379794, at *14.

In the Complaint, the Court can discern factual allegations addressing the first three elements: (1) that Ocwen was enriched by receiving tax benefits to which it was not entitled; (2) that Ocwen's enrichment came at the GVI's expense through lost tax revenue; and, (3) that Ocwen knew and appreciated the tax benefits it received. However, the fourth element simply does not fit the facts alleged. As noted, unjust enrichment is an equitable, common-law cause of action designed to prevent unearned windfall where no contract exists, but fairness dictates compensation for services provided.

Even though the Court accepts all of the GVI's factual assertions as true for purposes of this opinion, it seems clear to the Court that the GVI is attempting to fit a square peg into a round

[2] The elements of unjust enrichment were arrived at by the V.I. Supreme Court in *Walters v. Walters*, 60 V.I. 768 (V.I. 2014) following a *Banks* analysis.

hole, and it just won't work. Tax revenue is not compensation for goods or services in the traditional sense of an unjust enrichment claim, and the GVI's choice to pursue a quasi-contract cause of action is further undermined by Virgin Island law, which characterizes the EDC Certificate as creating a contractual relationship between the GVI and the recipient. *See* 29 V.I.C. § 701. The Virgin Islands Economic Development Authority ("VIEDA") administers the EDC Certificate program established under local Virgin Islands law to grant tax benefits to qualifying entities. Whether an entity has complied with the program's rules—and what tax may or may not consequently be due and owing—are questions of law governed exclusively by the statutory and regulatory frameworks established by the Virgin Islands for EDC Certificate companies and by the United States under the mirror tax system, ***<u>not</u>*** common-law equity. Relatedly, the GVI conspicuously fails to cite any statute, procedural rule, or judicial precedent supporting its contention that it may lawfully execute a claw back of previously awarded EDC Certificate tax benefits through a common-law action such as this.

*(2) <u>Centrality of the Mirror Tax Code:</u>*

This Court has previously held that common-law equitable claims to adjust or recover tax liabilities are preempted and displaced by the statutory tax code. *See Hefferman v. U.S. Virgin Islands*, No. 2009/0087, 2010 WL 4942160, at *3 (D.V.I. Nov. 30, 2010). In *Hefferman*, this Court granted the GVI's Rule 12(b)(6) motion to dismiss a taxpayer's common-law claims for unjust enrichment and conversion because those claims were displaced by the exclusive statutory mechanisms of Internal Revenue Code ("I.R.C.") § 7422. *Id.* Although the procedural roles are reversed here, *Hefferman*'s principle applies with equal force.

Under the Revised Organic Act, territorial common-law remedies must yield to federal statutory mandates and the comprehensive statutory tax regime applicable to the Virgin Islands.

*See* 48 U.S.C. § 1574(a); *St. Thomas-St. John Hotel & Tourism Ass'n, Inc. v. Gov't of U.S. Virgin Islands*, 357 F.3d 297, 302 (3d Cir. 2004). Pursuant to 48 U.S.C. § 1397, tax assessments, deficiencies, and collection procedures in the territory are governed exclusively by the mirrored I.R.C.

Where a comprehensive statutory framework governs tax obligations and collections, common-law causes of action cannot be used to circumvent those administrative and statutory channels. *See Flavo-Rich v. Quinn*, 18 V.I. 530, 531 (D.V.I. 1981) (holding that remedial laws should not "become an end-run around administrative channels"). Just as a taxpayer cannot invoke common-law remedies to bypass statutory refund procedures under I.R.C. § 7422, the GVI cannot leverage common-law equitable claims to sidestep the exclusive audit, assessment, and deficiency procedures prescribed by mirrored Title 26. Because the fundamental dispute here concerns Ocwen's underlying income tax liability under the Economic Development Program, the statutory mirror code provides the sole and exclusive remedy, displacing the GVI's common-law claims.

The Virgin Islands operates under a "mirror system" of taxation in which (with limited exception) the I.R.C. is applied to the Virgin Islands but residents pay income tax directly to the Treasury of the Virgin Islands. *Abramson Enters, Inc. v. Gov't of Virgin Islands*, 994 F.2d 140, 142 (3d Cir. 1993). The I.R.C. applies to the Virgin Islands pursuant to Naval Service Appropriations Act of 1921:

> The income-tax laws in force in the United States of America and those which may hereinafter be enacted shall be held to be likewise in force in the Virgin Islands of the United States, except that the proceeds of such taxes shall be paid into the treasuries of said islands….

48 U.S.C. §1397; *Abramson*, 994 F.2d at 142. The Virgin Islands reciprocally incorporated this provision, defining "Virgin Islands income tax law" as "so much of the [I.R.C.] as was made

applicable in the Virgin Islands" by 48 U.S.C. § 1397. 33 V.I.C. § 1931(15). The Virgin Islands enacted numerous provisions analogous to the I.R.C., including "a provision for judicial review in the district court of asserted deficiencies ..." *Pan Am. World Airways Inc. v. Gov't of the V.I.*, 459 F.2d 387 (3d Cir. 1972). "Whether codified locally or not, however, all provisions of the I.R.C. have force in the Virgin Islands unless they are manifestly inapplicable or incompatible with a separate territorial income tax." *WIT Equip. Co., Inc. v. Dir., V.I. Bureau of Internal Revenue*, 185 F. Supp. 2d 500, 503 (D.V.I. 2001) *quoting Abramson*, 994 F.2d at 142.

Where the GVI believes that an entity has failed to abide by the tax code, the tax code prescribes the procedures for determining the extent of the deficiency as well as the mechanisms to enforce the law, civilly and criminally. "When the IRS—or, in the case of the Virgin Islands, the [Bureau of Internal Revenue]—determines that a taxpayer has not paid all of the income tax due, the agency sends the taxpayer a notice of deficiency by certified or registered mail. *WIT Equip. Co., Inc.*, 185 F. Supp. 2d at 510. The letter of deficiency puts the taxpayer on notice that he has ninety days to file a suit to redetermine the deficiency. *Id*. The notice of deficiency is the jurisdictional prerequisite for a suit by either the taxpayer or the revenue agency, and "[u]ntil ninety days have passed, the IRS can neither make an assessment *nor utilize Court procedures for collection*." *Robinson v. United States*, 920 F.2d 1157, 1158 (3d Cir. 1990) (citing *Holof v. Comm'r*, 872 F.2d 50, 53 (3d Cir. 1989) (emphasis added)).

If a taxpayer does not file a petition in court, the IRS follows a discrete process, including making an assessment, issuing a "notice and demand letter," and eventually filing a lien against the taxpayer's property. *Id*; *see also* 33 V.I.C. § 1031. None of this can be done if there is no notice of deficiency. *Id* (quoting *Holof*, 872 F.2d at 53 ("The notice is a 'pivotal feature of the Code's assessment procedures,' … because it serves as a prerequisite to a valid assessment")).

"The Internal Revenue Code is clear that 'no assessment of a deficiency … and no levy or proceeding in court for its collection shall be made, begun, or prosecuted until such notice [of deficiency] has been mailed to the taxpayer, nor until the expiration of such 90-day … period.'" *Robinson*, 920 F.2d 1157 at 1158 (quoting 26 U.S.C. § 6213(a)); *see also* 33 V.I.C. § 943. It is clear that Congress—and through its analogous tax regime, the Virgin Islands—mandated the processes in the I.R.C. as the only method of recovering tax liabilities that are allegedly due to the government.

The GVI's attempts to obfuscate its aim of recovering tax liabilities by calling them "benefits" fails scrutiny. In holding up the EDC Certificate's contents under 29 V.I.C. § 718 as a cause of action, the GVI conspicuously elides the critical role played by the Secretary of the Treasury (or his delegate) and required compliance with I.R.C. § 934. Section 718 requires a certificate to state that a beneficiary's failure to adhere to the conditions required by the [Virgin Islands Economic Development Commission ("VIEDC")] nullifies the certificate and requires repayment of "any benefit actually received under the certificate." However, it further states that "[u]pon a final determination by the Secretary of the Treasury of the United States or his delegate that the beneficiary has not complied with the requirement of Internal Revenue Code section 934 …, the beneficiary shall pay or refund, as the case may be, to the [GVI], the amount of any subsidy benefits, based on income tax liability, actually received, or the amount of the reduction of income tax liability on a current basis for all the years of non-compliance." The language in each sentence mirrors the other and the difference between these two provisions, and whether they conflict, is not clear to the Court. However, as it pertains to tax liabilities resulting from noncompliance with I.R.C. § 934, it is clear that the I.R.C. controls, even as a matter of Virgin Islands law.

The Court accepts the GVI's pleaded facts as true and in a light most favorable to the GVI. As such, the Court does not dispute that the GVI has a colorable argument that it has suffered a pecuniary harm of lost tax revenues as a consequence of how Ocwen has operated its business in the Virgin Islands. However, the GVI has chosen the wrong vehicle to pursue its litigation. There is no question that the GVI's common law claim is for the recovery of alleged tax liabilities. There is also no question that the Internal Revenue Code provides the appropriate scheme for the assessment and collection of tax deficiencies.[3] *Abramson*, 994 F.2d at 389. Thus, the Court finds that the GVI's common law claims are preempted by statute and must be dismissed with prejudice.

*(3) Statute of Limitations Has Lapsed:*

Having determined that the GVI's common law claim is superseded by the comprehensive statutory framework governing tax obligations and collections as set forth in the mirror code, the Court now must also determine whether or not the three-year statute of limitations set forth in the tax code for a claim has run. As with *Hefferman*, the Court here must answer that question in the affirmative. *See Hefferman*, 2010 WL 4942160 at *5. "The running of the statute of limitations is an affirmative defense." FED. R. CIV. P. 8(c)(1); *Wisniewski v. Fisher*, 857 F.3d 152, 157 (3d Cir. 2017) (citations omitted). Although the Federal Rules of Civil Procedure require defendants to plead affirmative defenses in the answer, rather than a motion to dismiss, the Third Circuit authorizes statute of limitations defenses in a Rule 12(b)(6) motion "only if 'the time alleged in

[3] Both the I.R.C. and Virgin Island law prohibit suits to recover taxes without proper authorization. Under the I.R.C., such an action requires the authorization of the Secretary and may only proceed at the direction of the Attorney General or his delegate. 26 U.S.C. § 7401. Similarly, a civil suit for the collection of tax revenue under Virgin Islands law requires the authorization of the BIR Director and may only proceed at the direction of the United States attorney. 33 V.I.C. § 1661. Absent from the GVI's complaint is any evidence that its claim has the imprimatur of the Treasury Secretary, the Attorney General or his delegate (to include the United States attorney), or even the BIR Director. Having found that the matter is preempted by the applicable tax statute, this failure of process additionally warrants dismissal.

the statement of a claim shows that the cause of action has not been brought within the statute of limitations.'" *Schmidt v. Skolas*, 770 F.3d 241, 249 (3d Cir. 2014) (quoting *Robinson v. Johnson*, 313 F.3d 128, 134-35 (3d Cir. 2002)). The statute of limitations must be apparent on the face of the complaint, or else it cannot be the basis for a 12(b)(6) dismissal. *Id*. Moreover, a District Court is generally bound by "the allegations in the complaint, exhibits attached to the complaint, and matters of public record." *Id* (quoting *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993)). "However, an exception to the general rule is that a 'document *integral to or explicitly relied* upon in the complaint' may be considered 'without converting the motion to dismiss into one for summary judgment.'" *Id* (citing *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997).

The statute of limitations for assessment under the I.R.C. is three years from the date the return was filed or stamped. 26 U.S.C. § 6501(a). The revenue agency is "precluded by statute from assessing or collecting any taxes" unless it first "issues the taxpayer an effective notice of deficiency." *Holof v. Comm'r*, 872 F.2d 50, 53 (3d Cir. 1989).

The GVI claims that it is owed tax liabilities from 2012 to the present. [ECF No. 1-2 at 17]. Despite claiming injury from 2012 to present, it is unclear to the Court, based on the GVI's complaint, whether Ocwen currently holds an EDC Certificate, conducts any business in the Virgin Islands, or continues to file its income tax refunds in the Virgin Islands. By contrast, Ocwen cabins the period in question to an eight year period between 2012-2020 and includes its tax returns and other related tax filings for those years in its motion to dismiss. [ECF No. 7]. Because information in them is central to evaluating the GVI's claim, the Court will consider the tax returns and other related tax filings for 2013-20 that Ocwen appended to its motion to dismiss. [ECF. Nos. 7-2 & 7-4-12]. The rationale for this exception is that "the primary problem raised by looking to

documents outside the complaint—lack of notice to the plaintiff—is dissipated 'where plaintiff has actual notice … and has relied upon these documents in framing the complaint.'" *Id* (quoting *Watterson v. Page*, 987 F.2d 1, 3-4 (1st Cir. 1993)). "Plaintiffs cannot prevent a court from looking at the texts of the documents on which its claim is based by failing to attach or explicitly cite them." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997).

Ocwen's returns are integral to the GVI's complaint because the primary injury claimed by the GVI is the tax deductions claimed by Ocwen. The GVI seeks more than just the bare sum claimed on these returns but there can be little doubt that they will factor into the sum currently being tabulated as owed to the GVI. The GVI's claim stems, at least in part, from the deductions that Ocwen claimed each year that it filed its returns, and therefore the GVI had actual notice of each return. The GVI's actual notice of these documents is further evidenced by the stamp on each return stating that the document was received by the Virgin Islands Bureau of Internal Revenue, along with the date it was received. Each return also shows the filing date with certainty, and therefore the date the statute of limitations begins and ends. The final date of return provided in the record is October 14, 2021 [See ECF No. 7-12], meaning the statute of limitations expired on October 14, 2024—approximately six months before the GVI filed its complaint in the Superior Court of the Virgin Islands.[4]

Allowing the GVI's common law claims to proceed for this period "would render the I.R.C.'s three-year statute of limitations a dead letter; any litigant in this jurisdiction would then be able to circumvent the statute of limitations provided for in the I.R.C. simply by filing claims

[4] The record thus supports that Ocwen operated and claimed tax benefits in the Virgin Islands only for tax years 2012 through 2020. This section of the Court's memorandum opinion would, therefore, not apply to any tax returns filed or refunds sought by Ocwen within the three-year period prior to the expiration of the statute of limitations on October 14, 2024; however, the record contains no evidence of any such filings.

for unjust enrichment or conversion" rather than abiding by the procedures mandated by Congress. *See Hefferman*, 2010 WL 4942160, at *5. Undermining the statute of limitations by allowing common law suits—by citizens or the government—would subvert the administrative purpose of the tax code. As such, having found that the tax code preempts a common law claim of unjust enrichment to recover tax deficiencies, the Court finds that the attendant three-year statute of limitations periods applicable to tax years 2012-2020 have expired. The claims for these years must therefore be dismissed.

*(4) The § 7121 Closing Agreement:*

This Court has previously held that in 2022, the GVI entered into a valid closing agreement pursuant to 26 U.S.C. § 7121—applicable to the Virgin Islands under the mirror tax code, 48 U.S.C. § 1397—regarding tax years 2013, 2014, and 2015. *Ocwen USVI Services, LLC v. Gov't of the U. S. Virgin Islands*, No. 3:24-cv-00005, 2026 WL 2283017 (D. V.I. Aug 7, 2026) ("*Ocwen II*"). As the Court stated, "Closing agreements are meant to insure the finality of liability for both taxpayer and the IRS. This is why courts have ***strictly enforced*** closing agreements, finding them ***binding and conclusive*** on the parties …." *Id* at *5 (quoting *Hopkins v. Comm'r*, 120 T.C. 451, 457 (2003)).

The Court in *Ocwen II* also examined and disposed of fraud allegations concerning both the 2013, 2014, and 2015 tax returns and the formation of the closing agreement. The record has been developed and is clear that the 2013-2015 tax returns were audited and accepted by the Bureau of Internal Revenue. *Id* at *3. Similarly, as the Court instructed, a closing agreement may be set aside only upon a showing of fraud *in the inducement* of the making of the contract. *Id* at *5 (citing *Smith v. Comm'r*, 159 T.C. 33, 61 (2022). In other words, the fraudulent misrepresentation must have been made in pursuit of the closing agreement for the closing agreement to be set aside, *not* in the substance of the underlying tax returns. Having therefore ruled in *Ocwen II* that the GVI

entered into a valid closing agreement with Ocwen for tax years 2013, 2014, and 2015 pursuant to 26 U.S.C. § 7121 that is governed by general contract principles and was not induced by fraudulent means, the Court considers the matter settled and declines to revisit it here, unless and until the currently binding precedents are changed by a higher court.[5]

The Court's *Ocwen II* ruling applies only the 2013, 2014, and 2015 tax years. Nonetheless, the GVI's allegations regarding the remaining time period fail scrutiny for the reasons discussed above.

*(5) Failure to Follow Procedures under VI law*

The GVI alleges several instances in which Ocwen fails to abide by the terms and conditions of its EDC Certificate yet applies none of the applicable remedies or—critically—processes prescribed by U.S. Virgin Island law to address Ocwen's purported violations. The purpose of the EDC Certificates is to attract business, and therefore economic growth, to the Virgin Islands by offering certificates that grant the holder certain tax benefits under the law. 29 V.I.C. § 701. Each certificate is considered "as being in the nature of a contract between such government and the beneficiary[.]" 29 V.I.C. § 701(c). The power to grant or deny applications for certificates is vested in the VIEDA. 29 V.I.C. § 705.

By Virgin Islands law, an EDC Certificate granted to a business shall state that failure to perform certain conditions results in the certificate being "deemed to be of no force and effect," in which case "the beneficiary shall pay or refund as the case may be, to the [GVI], the amount of any benefit actually received under the certificate." 29 V.I.C. § 718(b). Two civil remedies are

[5] The GVI has appealed the Court's decision in *Ocwen II* as to whether 26 U.S.C. § 7121 creates a statutory cause of action that waives the sovereign immunity of the U.S. Virgin Islands. *Ocwen USVI Services, LLC v. Gov't of the United States Virgin Islands*, No. 3:24-cv-00005, 2026 WL 2283017 (D. V.I. Aug 7, 2026), *appeal docketed*, No. 26-3065 (3d Cir. Aug. 18, 2026). As of the date of this opinion, that matter remains pending before the Court of Appeals for the Third Circuit.

available to the VIEDA for an EDC Certificate holder's failure to abide by the terms of the economic development certificate:[6] 1) revoke, suspend, or modify the certificate pursuant to 29 V.I.C. § 722; or 2) levy a fine pursuant to 29 V.I.C. § 723. Both remedies require due notice and the opportunity of a hearing beforehand. 29 V.I.C. §§ 722 & 723.

Taken together, the GVI has not pleaded a claim under Virgin Islands law. As stated above, the Court accepts at face value that Ocwen failed to adhere to the requirements it agreed to when it accepted an EDC Certificate. However, incantations of clipped statutory language do not create a cause of action. As with the I.R.C., chapter 29 of the Virgin Islands Code contemplates the possibility of noncompliance and prescribes processes for the government to follow to achieve its ends. None of the prescribed processes includes a common law suit for unjust enrichment. This is yet another reason why the GVI's claim must be dismissed.

*b. <u>GVI's Action for Declaratory Judgment:</u>*

Count II of the GVI's Complaint (Action for Declaratory Judgment) will be dismissed with prejudice. As a preliminary matter, the Court observes that, just as with Count I, Count II does not meet the requirements set forth under FED. R. CIV. P. 8. Count II fails to cite to the appropriate Virgin Islands statute (or any statute for that matter) for the relief that they seek, and fails to undertake any analysis about how the relief they seek can be granted in light of the regnant statutory scheme for declaratory judgements established under Virgin Islands law. Here again, despite the GVI's failure to appropriately plead the relief that they seek, this Court will

[6] Applicants and beneficiaries who willfully make false or fraudulent statements in support of their application for an economic development certificate are subject to a fine not to exceed $25,000, imprisonment for up to two years, or both. Moreover, tax income retained by the beneficiary becomes due and payable subject to the assessment and collection laws in force. 29 V.I.C. § 725. The GVI focuses on Ocwen's alleged misrepresentations in its response but neither invokes this statute or gives any indication that the GVI is seeking to indict Ocwen or its employees.

nevertheless resolve the issues at hand on the merits, rather than simply dismissing the Count on the basis of a procedural default.

Under the *Erie* doctrine, when a federal court hears state law claims (or in this case, territorial law claims) via removal, it must apply the substantive law of the territory. *See Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938). Consequently, this Court looks to the Virgin Islands Declaratory Judgment Act, codified at 5 V.I.C. §§ 1261–1272. In seeking a declaratory judgment, the GVI attempts to procure a judicial declaration that Ocwen improperly received tax benefits and owes outstanding tax liabilities under the Economic Development Program. That effort fails for three independent reasons.

*First*, a general declaratory judgment action cannot supplant or bypass the exclusive statutory and administrative mechanisms established by the Virgin Islands Legislature for auditing, revoking, assessing, and collecting territorial taxes and economic incentives. Mirrored I.R.C. §§ 6212, 6213, and 7422 prescribe the exclusive statutory machinery for determining tax deficiencies and enforcing tax obligations. The GVI cannot sidestep its own administrative audit and assessment procedures by filing a general civil lawsuit under 5 V.I.C. § 1261 *et seq*. "While the declaratory relief chapter is remedial and to be liberally construed, it should not be construed so as to be allowed to become an end-run around administrative channels." *Flavo-Rich v. Quinn*, No. 1980/263, 1981 WL 704971, at *2 (D.V.I. July 13, 1981). Where the governing statutes prescribe a specific administrative framework—including audit procedures, deficiency notices, and statutory enforcement actions—the government cannot leverage general procedural declaratory relief as an independent cause of action to execute a retrospective tax claw back. For this reason alone, Count II fails to state a claim upon which relief can be granted and dismissal is warranted. But there is more.

*Second*, under *City of Los Angeles v. Lyons*, 461 U.S. 95 (1983), declaratory relief is an equitable, prospective remedy designed to clarify ongoing legal relationships and manage future risk; it may not be used to obtain a freestanding, retrospective judicial pronouncements regarding past statutory compliance. The GVI fails to identify any statutory or precedential authority permitting it to substitute a general declaratory judgment claim for its established administrative tax recovery procedures.

*Third*, the decision whether to entertain an action seeking declaratory relief rests within the sound discretion of this Court. The Virgin Islands Declaratory Judgment Act is modeled directly on the Uniform Declaratory Judgments Act. The statute includes an explicit mandate regarding uniform interpretation: 5 V.I.C. § 1272 states, "This chapter shall be so interpreted and construed as to effectuate its general purpose to make uniform the law of those states which enact it, and to harmonize, as far as possible, with federal laws and regulations on the subject of declaratory judgments and decrees."

In light of this statute, the Court believes it is useful to look at the federal statute on declaratory judgements, which states that district courts are authorized, "in the sound exercise of [their] discretion, to stay or to dismiss an action seeking a declaratory judgment before trial or after all arguments have drawn to a close." *Wilton v. Seven Falls Co.*, 515 U.S. 277, 281 (1995). Rather than being subject to the "normal principle that federal courts should adjudicate claims within their jurisdiction," district courts exercising DJA discretion are governed by "considerations of practicality and wise judicial administration." *Id.* at 288. The Virgin Islands Declaratory Judgment Act confers identical statutory discretion, permitting the Court to refuse declaratory relief where a decree would not terminate the uncertainty or controversy. *See* 5 V.I.C. § 1266. It is important to note that the primary (although not exclusive) purpose of the Virgin Islands declaratory judgment

law is to provide clarity on prospective matters and prevent future conflicts, rather than serving as a mechanism to resolve closed disputes that occurred in the past.

Given the command in Virgin Islands law to "harmonize . . . with federal laws and regulations on the subject of declaratory judgments and decrees," it is worth noting one aspect of the federal Declaratory Judgment Act. The federal statute provides, in relevant part: "In a case of actual controversy within its jurisdiction, *except with respect to Federal taxes* . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration . . ." *See* 28 U.S.C. § 2201(a) (emphasis added).

To be sure, the Virgin Islands statute on declaratory judgments does not contain this exclusion of tax matters from its ambit. Furthermore, while Title 26 is mirrored in the Virgin Islands, Title 28 is not. Nevertheless, when assessing the Virgin Islands statute's command to harmonize with federal law on declaratory judgments, combined with the unique features of the mirror tax code in the Virgin Islands, raises a novel question of law as to whether declaratory judgments can even be utilized to enforce past-due tax liabilities under the mirror code here in the territory. This Court need not, and does not, reach that question here. At a minimum, however, that interplay between the federal and Virgin Islands statutory schemes on taxes and declaratory judgments strips bare the doctrinal incoherence and analytical fragility of Count II in the GVI's complaint. Therefore, dismissal of Count II with prejudice is warranted, even accepting all of the facts alleged by the GVI as true.

*V)* *<u>Expectations for Pleading Matters in Federal Court</u>*

In closing, the Court wishes to address a portion of the GVI's complaint, specifically paragraphs 60-73, [ECF No. 1-2, pp. 11-13], which were a source of bafflement. In the offending

paragraphs, the GVI details a litany of unrelated regulatory enforcement actions from mainland jurisdictions—a veritable jeremiad of alleged wrongs, harms, and offenses attributed to Ocwen. The Court does not question the veracity of the information in paragraphs 60-73, however the Court does emphatically question its relevance. The decision to include this irrelevant information in the context of a complaint whose pleadings failed to meet the basic standards set forth in FED. R. CIV. P. 8 is perplexing.

At best, the inclusion of content so immaterial to the matter at hand was a tone-deaf tactical error. At worst, counsel for the GVI included this information in an effort to inflame the Court's and the public's opinion against Ocwen, somewhat akin to a prosecutor including the lurid details of a defendant's criminal history in an indictment. Either way, the GVI's improper inclusion of paragraphs 60-73 in the complaint falls below the standards expected of an attorney appearing before this Court, particularly on behalf of the Virgin Islands government.

Pleadings filed for an improper purpose, such as to harass, unnecessarily delay, or needlessly impose litigation costs may be subject to sanction, even for state court complaints removed to federal court. FED. R. CIV. P. 11; *Sofaly v. Portfolio Recovery Assets, LLC*, 155 F.4th 289, 293 (3d Cir. 2025) (citing *Meyer v. U.S. Bank Nat. Ass'n*, 792 F.3d 923, 928 (8th Cir. 2015)). The Court may also *sua sponte* "strike from a pleading … any redundant, immaterial, impertinent, or scandalous matter." FED. R. CIV. P. 12(f)(1).

Although sanctions against government's Counsel are not warranted at this time, the Court cautions Counsel for the GVI not to include irrelevant or inflammatory matters in future filings before this Court. Because the complaint is being dismissed with prejudice, on independent, substantive grounds, as described above, the Court will not strike the offending paragraphs, as doing so would be moot.

Nevertheless, the Court wishes to make explicitly clear to both parties that it did not consider, one way or the other, any of the information set forth in paragraphs 60-73 of the GVI's complaint in reaching its decision to dismiss the GVI complaint with prejudice.

In sum, the Court hereby **GRANTS** Ocwen's motion to dismiss [ECF No. 6] with prejudice.

**DATED**: October 14, 2026. *s/ Evan Rikhye*

**EVAN RIKHYE**
**United States District Judge**